IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



D&M FARMS, MARK HASTY, and
DUSTIN LAND, individually and on behalf
of all others similarly situated;

    Plaintiffs,

v.                                                                 CIVIL ACTION NO. 2:19-cv-463

BIRDSONG CORPORATION,

and

GOLDEN PEANUT COMPANY, LLC,

    Defendants.

*MEMORANDUM OPINION AND ORDER*

Before the Court are Birdsong Corporation and Golden Peanut Company's (collectively "Defendants") Motions to Dismiss. ECF Nos. 47–50; *see also* ECF No. 1 (Plaintiffs' Complaint), ECF Nos. 65, 67 (Defendants' requests for a hearing on their Motions to Dismiss). After reviewing the relevant filings, the Court finds that a hearing on the Defendants' Motions to Dismiss is not necessary. Accordingly, Defendants' requests for a hearing on their Motions to Dismiss are **DENIED**. Further, Defendants' Motions to Dismiss are **DENIED**.

I. FACTUAL AND PROCEDURAL HISTORY

The Plaintiffs in the instant matter are a group of peanut farmers who sell raw, harvested Runner peanuts to the Defendants to be processed and sold to food companies or other manufacturers. ECF No. 1 at 1. Plaintiffs filed their Complaint on September 5, 2019. *Id.* The Complaint accuses Defendants using their 80–90% market share in the peanut selling industry to facilitate a price fixing conspiracy to depress the price of Runner peanuts. *Id.* Plaintiffs seek a

1

single claim for relief on behalf of a nationwide class under Section 1 of the Sherman Antitrust Act. *Id.* at 33.

Defendants Birdsong Corporation and Golden Peanut Company filed separate Motions to Dismiss on October 21, 2019. ECF Nos. 47–50. Plaintiffs received leave to file a single omnibus memorandum of law in response to Defendants' Motions to Dismiss on November 6, 2019. ECF No. 58. Plaintiffs filed their response in opposition to Defendants' Motions to Dismiss on November 11, 2019. ECF No. 59. Defendants Birdsong Corporation and Golden Peanut Company replied separately to Plaintiffs' response and requested a hearing on the Motions to Dismiss on November 19, 2019. ECF Nos. 64–67. The Court finds that a hearing is unnecessary to resolve Defendants' Motions to Dismiss. Accordingly, the matter is ripe for disposition.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. The United States Supreme Court ("Supreme Court") has stated that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Specifically, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Moreover, at the motion to dismiss stage, the court is bound to accept all of the factual allegations in the complaint as true, but is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Assessing the

claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III. DISCUSSION

### A. Claims Under Section 1 of the Sherman Act

To state a claim under Section 1 of the Sherman Act, plaintiffs must allege facts supporting the following: (1) a contract, combination, or conspiracy; (2) that imposed an unreasonable restraint on trade. *Dickson v. Microsoft Corp.*, 309 F.3d 193, 202 (4th Cir. 2002) *citing Oksanen v. Page Mem'l Hosp.*, 945 F.2d 696, 702 (4th Cir. 1991) (en banc). Concerted action to set prices, or price fixing, has been per se illegal for over a century and is prohibited by Section 1 of the Sherman Act. *See Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 761 (1984). Plaintiffs' Complaint advances a single claim for relief against the Defendants, alleging that they engaged in a conspiracy to restrain trade by fixing prices for Runner peanuts in the United States, in violation of Section 1 of the Sherman Act. ECF No. 1 at ¶¶ 116–21; *see* 15 U.S.C. § 1. Because price fixing constitutes a per se violation of the Sherman Act, the only question is whether the Complaint contains sufficient facts to support the inference that a price-fixing conspiracy existed between the Defendants.

In general, pleading a Section 1 conspiracy requires enough factual matter so that an agreement to violate the Sherman Act may be plausibly inferred, rather than a mere conceivable possibility. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007). Moreover, district courts retain the power to insist on some specificity in pleading before allowing an antitrust complaint to proceed. *Id.* at 558 *quoting Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 528 n. 17 (1983). Parallel conduct, or similar actions undertaken by entities in related industries during the same time period, is not sufficient to support an allegation of an unlawful conspiracy.

*Twombly*, 550 U.S. at 556–57. Such parallel conduct may be a product of the defendants' lawful and independent goals, which is not suggestive of unlawful activity without some other indication of an antitrust conspiracy. *Id.* Instead, such an allegation must be placed in a context that raises the plausible suggestion of an agreement to engage in unlawful activity before the parallel conduct by the relevant entities occurred. *Id.* at 557. As a practical matter, a complaint must contain enough factual material to form the "reasonably founded hope that the discovery process will reveal relevant evidence" of the alleged antitrust conspiracy. *Id.* at 570.

**B. Adequacy of the Complaint**

1. *Sufficiency of the Factual Allegations Supporting a Section 1 Conspiracy in the Complaint*

Defendants argue that the price of Runner peanuts from 2014 to 2018 was a result of natural market forces and subsidies in the 2014 Farm Bill. *See generally* ECF Nos. 48, 50 (discussing Defendants' views on the forces impacting the Runner peanut market). Defendants further argue that their exhibits may be considered because the underlying facts are derived from official government reports and statistics and are discussed, quoted, and copied in the Complaint. *See e.g.* ECF No. 50 at 4 fn. 4 (discussing the Plaintiffs' utilization of National Agricultural Statistics Service ("NASS") data in the Complaint to support Defendant Golden Peanut's factual contentions on Runner peanut prices); ECF No. 48 at 19 (referencing agency fact sheets and the 2014 Farm Bill legislative history to support Defendant Birdsong's factual counterargument regarding Runner peanut prices); *see also id.* at Ex. A (attaching an option contract for Defendant Birdsong to purchase Runner peanuts from Plaintiff D&M Farms in 2019). These exhibits and references contain material that purportedly supports the "obvious alternative explanation" for the depressed prices of Runner peanuts during the time of the alleged conspiracy. *See* ECF No. 48 at 18–20 (discussing the "fundamentals of oversupply" and the growing incentives created by the 2014 Farm

4

Bill); ECF No. 50 at 13–14 (same); *see also Twombly*, 550 U.S. at 557 (finding dismissal of antitrust claims to be appropriate when an obvious alternative explanation for the defendants' conduct can be identified). The sum of Defendants' contentions is that once their preferred interpretation of the economic data (including the material not directly associated with the Complaint) is applied, it will be obvious that the low prices of Runner peanuts from 2014 to 2018 were a response to natural market forces and the subsidy-based incentives created by the 2014 Farm Bill, not the price fixing conspiracy. ECF No. 48 at 8–13; ECF No. 50 at 13–14.

In contrast, the Plaintiffs accuse the Defendants of manipulating and coordinating their inventory reports to overstate the supply of Runner peanuts, making the NASS price and inventory data unreliably distorted by the alleged conspiracy between Birdsong and Golden Peanut. ECF No. 1 at ¶¶ 84–91. Plaintiffs also accuse Defendants of using the trade associations as their conduit for facilitating the alleged price fixing conspiracy. *Id.* at ¶¶ 63–71. Clearly, the parties do not agree on the efficacy of the economic and peanut inventory data and the Defendants' role in influencing that data *as a factual matter*. In evaluating the sufficiency of the Complaint, the Court will not consider any material outside its scope in response to Defendants' Motions to Dismiss. *See supra* Part II (discussing pleading standards); ECF No. 48, Ex. 1–3; ECF No. 50, Ex. 1–4; *see also* ECF No. 59 at 27–28 (listing interpretive material outside the Complaint submitted by the Defendants, including hyperlinks within their Motions to Dismiss). In other words, the Court's examination of the Complaint is limited to the sufficiency of the factual allegations supporting the inference of a price fixing conspiracy, *not* the effectiveness of the alleged conspiracy, the price of Runner peanuts, or the parties' factual interpretations of peanut price and inventory data considered alone. Instead, the Court will examine the totality of the factual allegations the Complaint presents in order to make a determination on its sufficiency.

The Court finds that the Complaint contains sufficient factual allegations to state a claim under 15 U.S.C. § 1. Taken in context, the Complaint alleges that Defendants used their supermajority market share and control over the peanut shelling trade associations to overstate Runner peanut inventory data that was submitted to the USDA and to coordinate the terms of the option contracts offered to farmers. *See* ECF No. 1 at ¶¶ 48, 63–71, 86–91. The Complaint points out that the Defendants had numerous opportunities to make such an arrangement by virtue of geographic proximity and the social and professional associations of the Defendants' leadership structure. *Id.* at ¶¶ 61–71. Critically, the Complaint alleges that Defendants released identical shelling contract price offers on the same day, year after year to take advantage of the Plaintiffs' need to offload their harvested peanuts in the spring of each growing cycle. *Id.* at ¶ 89.

Plaintiffs have not simply alleged that the prices of runner Peanuts were depressed because a conspiracy between the Defendants existed or that the Defendants engaged in parallel conduct. Instead, the Complaint outlines facts that support the plausible inference of a price fixing conspiracy by (1) providing a motive of the stabilization of Runner peanut prices, (2) connecting Defendants' simultaneously issued price offers to the broader context of the Runner peanut market, and (3) alleging efforts by the Defendants to coordinate price offers and conceal their actual peanut inventory using peanut shelling trade associations. In sum, while none of the Complaint's allegations are sufficient to state a Section 1 claim when considered in isolation, the totality of the factual assertions within the Complaint give rise to the plausible inference of a price fixing conspiracy. Additionally, the Runner peanut price and inventory data Plaintiffs offer in the Complaint to support their Section 1 claim is not definitively contradicted by an "obvious alternative explanation" for the depressed price of Runner peanuts. In fact, Plaintiffs are challenging the accuracy of much of the data that illuminates the dispute between the parties. *See*

*e.g.* ECF No. 59 at 15–16 (alleging that Defendants controlled Runner peanut market data, including pricing and inventory numbers reported to the USDA). Accordingly, Plaintiffs' pleading is sufficient and Defendants' Motions to Dismiss are denied.

2. *The Statute of Limitations of 15 U.S.C. § 15b and Active Concealment*

Defendants further contend that Plaintiffs' claims are undercut by the limitations periods for Title 15 antitrust actions, while Plaintiffs argue that Defendants concealed their antitrust collusion until after Hurricane Michael in 2018. *See* 15 U.S.C. § 15b; ECF No. 1 at ¶¶ 86, 107–115 (Plaintiff's allegations of Defendants' active concealment, including manipulation of peanut inventory reporting to the USDA); ECF No. 48 at 26–30 (Defendant Birdsong's discussion of the limitations period); ECF No. 50 at 20–24 (Defendant Golden Peanut's discussion of the limitations period).

To toll the statute of limitations, a claimant must establish the following: (1) the party pleading the statute fraudulently concealed facts which are the basis of the claim; (2) the claimant failed to discover those facts within the statutory period; and (3) the claimant exercised due diligence. *Pocahontas Supreme Coal Co., Inc. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218 (4th Cir. 1987) *citing Weinberger v. Retail Credit Co.*, 498 F.2d 552, 555 (4th Cir. 1974). Although price fixing is not inevitably deceptive or concealing, the statute of limitations may be tolled if affirmative acts to conceal are contained within any antitrust conspiracy. *See generally Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119 (4th Cir. 1995) (adopting the intermediate, affirmative acts standard for fraudulent concealment for all federal statutes, including price fixing conspiracies and other antitrust violations).

Here, Plaintiffs allege that Defendants underreported their inventory of Runner peanuts to the USDA beginning in 2014, which obscured the alleged price fixing by producing flawed peanut

price data that was endorsed by a government agency. ECF No. 1 at ¶¶ 42, 54. The Plaintiffs then relied on that flawed USDA data in their exercise of due diligence in evaluating the runner Peanut market and the prices that could be commanded from Defendants. *Id.* at ¶¶ 48, 54, 55. The Complaint proffers that the alleged price fixing was only discovered because of the anticipated shortage of Runner peanuts that did not occur in the aftermath of Hurricane Michael in 2018. *Id.* at ¶¶ 111–113. These allegations satisfy the requirements to toll the statute of limitations by alleging that Defendants concealed their price fixing by underreporting their inventory to the USDA, frustrating any attempts at due diligence by the Plaintiffs from 2014 to 2018. Therefore, the Complaint contains enough factual material to toll the limitations period.

## IV. CONCLUSION

For the foregoing reasons, Defendants' requests for a hearing on their Motions to Dismiss are **DENIED**. Further, Defendants' Motions to Dismiss are **DENIED**.

The Court **DIRECTS** the Clerk to provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
May /3, 2020

/s/
Raymond A. Jackson
United States District Judge