

FILED

MAR - 3 2021

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**D&M FARMS, MARK HASTY, DUSTIN
LAND, ROCKY CREEK PEANUT FARMS,
LLC, DANIEL HOWELL, and, LONNIE
GILBERT, individually and on behalf
of all others similarly situated;**

      **Plaintiffs,**

**v.**                                                    **CIVIL ACTION NO. 2:19-cv-463**

**BIRDSONG CORPORATION, GOLDEN
PEANUT COMPANY, LLC, and OLAM
PEANUT SHELLING COMPANY, INC.**

      **Defendants.**

## *MEMORANDUM OPINION AND ORDER*

Before the Court is Plaintiffs' Motion for Final Approval of Settlements. ECF No. 527. On

Wednesday, December 16, 2020, the Court held a Settlement Fairness Hearing. ECF No. 507. On

December 23, 2020, the Court granted Preliminary Settlement Approval for both the Olam and

Birdsong settlement classes in two separate orders. ECF Nos. 514 and 515. For the reasons stated

below, Plaintiffs' Motion for Final Approval of Settlements is **GRANTED.**

### I. FACTUAL AND PROCEDURAL HISTORY

Plaintiffs D&M FARMS, MARK HASTY, DUSTIN LAND, ROCKY CREEK PEANUT

FARMS, LLC, DANIEL HOWELL, and LONNIE GILBERT, individually and on behalf of all

others similarly situated (collectively "Plaintiffs") filed their initial complaint on September 5,

2019 against Defendants BIRDSONG CORPORATION, GOLDEN PEANUT COMPANY, LLC,

and OLAM PEANUT SHELLING COMPANY, INC.'s (collectively "Defendants"). ECF No. 1.

Plaintiffs filed a Second Amended Class Action Complaint (the "Complaint") on May 27, 2020.

ECF No. 148. Plaintiffs are a group of peanut farmers who sell raw, harvested runner peanuts to the Defendants (also known as "shellers") to be processed and sold to food companies or other manufacturers. *Id.* at 1. From approximately 2011 to 2013, "the Peanut industry experienced drastic weather-related price changes that made it difficult for Defendants […] to manage risk and plan for production." *Id.* at 2. Since in or around January 2014, "the prices paid by shellers to Peanut farmers for Runner[] [peanuts] have remained remarkably flat and unchanged, despite significant supply disruptions" such as hurricanes. *Id.* Because of this significant difference in pricing norms within the industry, Plaintiffs accuse Defendants of "conspir[ing] and collud[ing] with one another to stabilize and depress Runner [peanut] prices." *Id.*

According to the Complaint, Defendants have used their 80–90% market share in the peanut selling industry to facilitate a price fixing conspiracy to depress the price of runner peanuts. *Id.* at 1. Plaintiffs seek a single claim for relief, on behalf of a nationwide class, under Section 1 of the Sherman Antitrust Act. *Id.* at 36. The purported class includes "[a]ll farmers who sold Runner Peanuts to Defendants or their co-conspirators in the United States from at least as early as January 1, 2014 until the present." *Id.* at 33. Specifically excluded from the purported class are any "Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. *Id.*

On December 2, 2020, the Court certified the following class:

"All persons or entities in the United States who sold raw, harvested runner peanuts to any of the Defendants, their subsidiaries or joint-ventures, from January 1, 2014 through December 31, 2019 (the "Class Period"). Specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant."

ECF No. 496.

Prior to class certification, Plaintiffs filed a Motion for Settlement with Defendant Olam Peanut Shelling Company, Inc. ("Olam") on October 23, 2020. ECF No. 300. Olam filed a Response in Support of Plaintiffs' Motion on October 26, 2020. ECF No. 305.  Plaintiffs subsequently filed a Motion for Settlement with Defendant Birdsong Corporation ("Birdsong") on November 2, 2020. ECF No. 368. Defendant Birdsong did not file a response.

The Court held a hearing on Plaintiffs' settlement motions on Wednesday, December 16, 2020. ECF No. 507. At the hearing, the Court directed the parties to redraft both Proposed Orders for Preliminary Settlement on behalf of the Olam and Birdsong Settlement Classes. *Id.* The Court ultimately entered separate orders for both settlement classes on December 23, 2020. ECF Nos. 514 and 515.

On January 13, 2021, Plaintiffs' filed a Motion for Final Approval of Settlements with Defendants Olam and Birdsong. ECF No. 527. Plaintiffs also filed a Motion for Costs. ECF No. 529. Defendants did not file responses to either motion. These matters were referred to Your Honor on January 28, 2021.

## II. LEGAL STANDARD

### A. The Legal Standard for Class Action Settlements

Rule 23(e) of the Federal Rules of Civil Procedure provides that no class action "shall … be dismissed or compromised without the approval of the court." To that end, "[t]he approval of a proposed settlement agreement is in the sound discretion of the Court." *Strang v. JHM Mortgage Sec. Ltd. P'ship*, 890 F. Supp. 499, 501 (E.D. Va. 1995) (citations omitted). Furthermore, for the Court to approve a class action settlement, that proposed settlement must be "fair, adequate and reasonable to Class Members." FED. R. CIV. P. 23(e)(2); *see also In re: Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices and Prods. Liab. Litig.*, 952 F.3d

471, 484 (4th Cir. 2020) ("considerable deference" given to trial court in determining whether "to approve a class-action settlement as fair, reasonable, and adequate") (internal citation omitted). "[T]here is a strong initial presumption that the compromise is fair and reasonable." *In re Microstrategy, Inc. Sec. Litig.*, 148 F.Supp.2d 654, 663 (E.D. Va. 2001)("*MicroStrategy I*"). Courts are to "appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986).

Furthermore, Rule 23(e)(2) lists various factors to consider when determining the fairness, reasonableness, and adequacy of parties' settlements. These factors include whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. Rule 23(e)(2)

Additionally, the United States Court of Appeals for the Fourth Circuit (the "Fourth Circuit") provides district courts with a two-level analysis when evaluating a settlement's fairness and adequacy. *In re Jiffy Lube Securities Litigation*, 927 F.2d 155, 158-59 (4th Cir. 1991). First, the relevant factors in assessing a settlement's fairness are:

> "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of [that] class action litigation."

*Jiffy Lube*, 927 F.2d at 159. Next, the factors to be considered in assessing a settlement's adequacy are:

"(1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expenses of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement."

*Id.* at 159. After the Fourth Circuit created its fairness and adequacy factors, the Rule 23(e)(2) factors listed above were added to the Federal Rules of Civil Procedure on December 1, 2018. *See Cantu-Guerrero v. Lumber Liquidators, Inc.*, 952 F.3d 471, n. 8 (4th Cir. 2020). The Fourth Circuit acknowledges in *Cantu-Guerrero v. Lumber Liquidators, Inc.* that "because our factors for assessing class-action settlements almost completely overlap with the new Rule 23(e)(2) factors, the outcome[s] [are] the same under both our factors and the Rule's factors." *Id.* Because of the substantial overlap regarding both tests, the Court will examine Plaintiffs' Motion for Settlement based upon the Rule 23(e)(2) factors.

## III. DISCUSSION

In conducting its assessment of the parties' proposed settlement, the Court notes that Defendants did not object to Plaintiffs' Motion for Final Approval of the Olam and Birdsong class settlements. Nonetheless, the Court will apply the Rule 23(e)(2) factors to the parties proposed settlement to ensure "protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." *Jiffy Lube*, 927 F.2d at 158. The following is an assessment of each factor within Rule 23(e)(2).

### *A. The class representatives and class counsel have adequately represented the class.*

Upon review, the Court finds that Plaintiffs' class representatives - D&M FARMS, MARK HASTY, DUSTIN LAND, ROCKY CREEK PEANUT FARMS, LLC, DANIEL HOWELL, and LONNIE GILBERT - adequately represent the class. It is imperative that the named plaintiffs and the class "share common objectives and the same factual and legal positions," ensuring that there

are no "fundamental" conflicts that go to the "heart of the litigation." *Gunnells v. Healthplan Sers., Inc.*, 348 F.3d 417, 430-31 (4th Cir. 2003).

Here, the named Plaintiffs are a group of peanut farmers who sell raw, harvested runner peanuts to the Defendants. As persons and entities who fall squarely within the certified class, the Court finds no evidence to suggest that the interests of the named Plaintiffs in any way contradicts that of the certified class.

Additionally, Counsel for Plaintiffs have appeared before the Court in this matter for almost two years. In that time, the Court has found counsel to be adequate and capable of competently adjudicating the class claim. Accordingly, the requirements for subsection (A) of Rule 23(e)(2) are met.

**B. *The proposal was negotiated at arm's length.***

The parties were at all times represented by counsel in this action. Additionally, "the parties had nearly completed fact and expert discovery and, thus, were acutely aware of strengths and weaknesses of their respective cases" at the time of settlement negotiations. ECF No. 528 at 10. Accordingly, the requirements for subsection (B) of Rule 23(e)(2) are also satisfied.

**C. *The relief provided for the class is adequate.***

To date, Plaintiffs, Olam, and Birdsong have agreed to a total settlement fund of $57,750,000. Pursuant to Rule 23(e)(2), when considering the adequacy of relief, the Court will examine factors such as: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, (iii) the terms of any proposed award of attorney's fees; and (iv) any agreement required to be identified under Rule 23(e)(3).

With regard to factors (iii) and (iv), there are no additional agreements pursuant to Rule 23(e)(3) for the Court to address and the parties did not negotiate attorneys' fees in either the Olam

or Birdsong settlement proposals. See ECF No. 528 at 15. Additionally, Plaintiffs' counsel has yet to file any motion for attorneys' fees. Instead, Plaintiffs' counsel intends to file a "motion seeking an award of attorneys' fees and service awards [] after Plaintiffs' claims against Golden Peanut have been resolved." *Id.*

Turning to the costs, risks, and any potential delay of trial and appeal, adjudication of Plaintiffs' claims has already proven costly. Plaintiffs submitted an affidavit to the Court detailing their costs accrued thus far in litigation. ECF No. 530. These costs include, but are not limited to, costs of nearly $1.4 million for experts and over $125,000 for jury consultation and trial graphics. *Id.* Additionally, inherent in all litigation is risk which certainly impacts that settlement total. Moreover, future appeals of any jury outcome are not only possible, but likely given the amount of money at stake. In sum, any further litigation of this case would be lengthy, complex, and expensive, making settlement favorable to the Court. *See MicroStrategy I*, 148 F. Supp. 2d at 667 (where the court granted plaintiffs' motion for settlement, in part, because "additional litigation of plaintiffs' claims... would likely have been protracted and costly, requiring extensive expert testimony.... [Additionally,] there is little doubt that a jury verdict for either side would only have ushered in a new round of litigation in the Fourth Circuit and beyond, thus extending the duration of the case and significantly delaying any relief for plaintiffs.").

Lastly, Plaintiffs proposed method of distribution is "that the Settlement Fund, plus accrued interest, will be allocated among approved claimants according to the amount of their recognized sales of Runner Peanuts to Defendants during the Class Period, after payment of attorneys' fees, litigation and administration costs and expenses, and service awards for Class Representatives." ECF No. 528 at 20. This type of distribution plan is commonly referred to as a pro-rata distribution plan which has been previously approved by the Court in similar class action litigation. *See*

*MicroStrategy I*, 148 F. Supp. 2d at 668 (where the court approved plaintiffs' pro rata distribution noting that such distribution plans "generally treat[] all class members' losses in the same way."). Moreover, the plan does not award additional funds to any one type of plaintiff and ensures fair treatment of each member of the class. Accordingly, Plaintiffs' pro rata distribution method is fair and reasonable.

In sum, the terms of the parties' settlements appear to adequately provide relief to the class.

### D. The proposal treats class members equitably relative to each other.

The Court, having previously certified the class in Plaintiffs' cause of action, now turns to whether the settlement proposals will treat class members equitably. The class will be issued an award based upon the amount of their individually recognized sales of runner peanuts. This type of distribution is fair and equitable as to ensure that class members are not over- or under-compensated for any alleged harm.

Importantly, however, Plaintiffs' counsel notes that counsel may seek a service award for the class representatives. ECF No. 528 at 16. "Service awards are 'intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and sometimes, to recognize their willingness to act as a private attorney general." *Galloway v. Williams*, No. 3:19-cv-470, 2020 WL 7482191, at *6 (E.D. Va. Dec. 18, 2020) (*quoting Berry v. Schulman*, 807 F.3d 600, 613 (4th Cir. 2015)). Generally, "[c]ourts recognize the purpose and appropriateness of service awards to Class Representatives." *See Brown v. Transurban* USA, Inc., 318 F.R.D. 560, 578 (E.D. Va. 2016). Should the Court grant a service award to the class representatives, the reward will be fair and reasonable in accordance with the requirements under Rule 23(e)(2). Therefore, the proposed Olam and Birdsong class settlements treat class members equitably relative to one another.

### III. CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Final Approval of Settlements for Defendants Olam and Birdsong is **GRANTED**.

The Clerk is **DIRECTED** to provide a copy of this Memorandum Opinion and Order to counsel of record.

**IT IS SO ORDERED.**

Norfolk, Virginia
March   3, 2021

UNITED STATES DISTRICT JUDGE