UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| IN RE PEANUT FARMERS ANTITRUST LITIGATION | Case No. 2:19-cv-00463<br><br>**Honorable Raymond A. Jackson**<br>**Honorable Lawrence R. Leonard** |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION
TO PRELIMINARILY APPROVE SETTLEMENT WITH
DEFENDANT GOLDEN PEANUT AND AUTHORIZE
<u>DISSEMINATION OF NOTICE TO THE CLASS</u>**

**I.	INTRODUCTION**

Plaintiffs have reached a proposed settlement of their claims with the last remaining defendant in this litigation, Defendant Golden Peanut Company, LLC ("Golden Peanut").[1] Pursuant to the Settlement Agreement, Golden Peanut will pay $45,000,000 in United States dollars into escrow for the benefit of the Class.

Plaintiffs now move the Court to (1) preliminarily approve the Settlement Agreement, (2) authorize dissemination of notice to the Class,[2] and (3) set a date for the Final Fairness Hearing. At the Final Fairness Hearing, Plaintiffs' Interim Co-Lead Counsel will request entry of a final order and judgment ("Final Order"), consistent with the Settlement Agreement, dismissing with prejudice all claims against Golden Peanut and retaining jurisdiction for the implementation and enforcement of the Settlement Agreement only.[3]

---

[1] The Settlement Agreement (hereinafter, "Settlement" or "Settlement Agreement") is attached as Exhibit A to the Declaration of Brian D. Clark, which has been filed contemporaneously with Plaintiffs' Motion to Preliminarily Approve Settlement with Defendant Golden Peanut and Authorize Dissemination of Notice to the Class and this supporting memorandum.

[2] On December 2, 2020, the Court entered an Amended Memorandum Opinion and Order ("Certification Order") finding that this case should proceed as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure. (ECF No. 496). Pursuant to the Court's Order dated December 23, 2020 (ECF No. 516), notice was mailed to potential Class members on January 12, 2021 and published in several regional publications between January 13 and January 22. Potential Class members have until March 13, 2021 to opt out of the Class, and to date only two entities elected to do so.

[3] Although the Court's Certification Order certified this case as a class action, the Certification Order did not formally appoint the named plaintiffs (D&M Farms, Mark Hasty, Dustin Land, Lonnie Gilbert, Daniel Howell and Rocky Creek Farms) as representatives of the Class, nor did it formally appoint (a) Brian D. Clark of Lockridge Grindal Nauen PLLP and Kimberly A. Justice of Freed Kanner London & Millen LLC as Co-Lead Counsel for the Class, and (b) Wyatt B. Durrette, Jr. of Durrette, Arkema, Gerson & Gill PC as Liaison Counsel for the Class. While the Court did make the foregoing appointments for the Olam and Birdsong Settlement Classes (*see* ECF Nos. 514 and 515), Plaintiffs request that the Court make such appointments formally on behalf of the certified Class.

1

## II. BACKGROUND

Plaintiffs are peanut farmers in the United States who sold raw, harvested runner peanuts ("Runners") to peanut shelling companies. Plaintiffs allege, among other things, that Defendants Golden Peanut, Olam Peanut Shelling Company, Inc. ("Olam"), and Birdsong Corporation ("Birdsong") entered into a conspiracy to depress prices paid to the Class for Runners during the Class Period, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

Plaintiffs filed a complaint on September 5, 2019 (ECF No. 1) against Defendants Golden Peanut and Birdsong, which Defendants moved to dismiss. (ECF Nos. 47-50). The Court denied Defendants' motions to dismiss on May 14, 2020 (ECF No. 135). Plaintiffs filed a Second Amended Class Action Complaint on May 27, 2020 (ECF No. 148), naming Olam as a Defendant for the first time, and all Defendants answered this complaint on June 26, 2020.

On December 2, 2020, the Court certified the following Class under Rule 23(b)(3) of the Federal Rules of Civil Procedure:

> All persons or entities in the United States who sold raw, harvested runner peanuts to any of the Defendants, their subsidiaries or joint-ventures, from January 1, 2014 through December 31, 2019 (the "Class Period"). Specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.

Certification Order at 18 (ECF No. 496).[4]

---

[4] On December 16, 2020 Golden Peanut petitioned the United States Court of Appeals for the Fourth Circuit for permission to appeal the Certification Order under Fed. R. Civ. P. 23(f), and Plaintiffs filed their opposition on December 28, 2020. On January 27, 2021, the Fourth Circuit deferred ruling on the petition, but ordered formal briefing of the appeal. *Golden Peanut Company, LLC v. D&M Farms, et al.*, No. 20-502 (4th Cir. Jan. 27, 2021) (Doc. 30). Pending approval of the Settlement Agreement, Golden Peanut filed a motion with the Fourth Circuit requesting that its appeal be stayed, which the Fourth Circuit granted on February 26, 2021. *Golden Peanut Company, LLC v. D&M Farms, et al.*, No. 20-502 (4th Cir. Feb. 26, 2021) (Doc. 40).

In October and November 2020 respectively, Plaintiffs reached settlements with Olam and Birdsong totaling $57,750,000. On December 23, 2020, the Court entered orders preliminarily approving the Olam and Birdsong settlements, certifying Olam and Birdsong Settlement Classes, and authorizing dissemination of notice to the Olam and Birdsong Settlement Classes, as well as notice to potential members of the litigation Class regarding class certification. (ECF Nos. 514-515). The Court scheduled a Fairness Hearing on March 25, 2021 to determine whether to finally approve the Olam and Birdsong settlements, and whether to grant Class Counsel's request for reimbursement of litigation costs and expenses. *Id*. Class Counsel did not request attorneys' fees or service awards for the Class Representatives at the time they sought preliminary or final approval of the Olam and Birdsong settlements, but did request reimbursement of litigation costs and expenses. Should the Court preliminarily approve the Settlement Agreement with Golden Peanut, then in addition to filing a motion for final approval, Plaintiffs will file a separate motion for fees not to exceed 33.33% of the Settlement Fund and service awards for each of the Class Representatives in an amount up to $40,000. Additionally, Plaintiffs will also request an award of any litigation costs and expenses that remain unreimbursed after the prior motion for reimbursement is ruled upon.

Because the Court certified the Class in its Certification Order, there is no need for a separate Golden Peanut settlement class. Instead, the proposed Golden Peanut Settlement Agreement will apply to all potential Class members who did not opt out of the litigation Class by March 13, 2021.[5]

---

[5] *See Low v. Trump University, LLC*, 881 F.3d 1111, 1121-22 (9th Cir. 2018) (No second opportunity for class members to object to settlement reached after class certified, where notice to class was clear that class members who did not opt out of class would be bound by future judgments, rulings, and settlements); *In re Blood Reagents Antitrust Litig.*, 2:09-md-02081 (E.D. Pa. Oct. 25, 2018) (referencing fact that class members could object to settlement reached after

### III. SUMMARY OF THE SETTLEMENT AGREEMENT

After vigorous arm's-length negotiations and with the assistance of nationally renowned mediator Eric D. Green, Plaintiffs and Golden Peanut agreed to settle the litigation for $45,000,000. In consideration, Plaintiffs and the Class agree, among other things, to release any claim against Golden Peanut and its affiliates, which was or could have been brought in this litigation in relation to the conduct alleged in the Complaint.

### IV. STANDARDS APPLICABLE TO PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT

Class action settlements minimize the litigation expenses of the parties and reduce the strain such litigation imposes upon already scarce judicial resources. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). However, a class action may be settled only with court approval. Before the court may give its final approval, all class members must be given notice of the proposed settlement in the manner the court directs. Fed. R. Civ. P. 23(e). Generally, before directing that notice be given to class members, the court makes a preliminary evaluation of the proposed class action settlement. The Manual For Complex Litigation (Fourth) § 21.632 (2004) explains:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation . . . . The Judge must make a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms and must direct the preparation of notice of the . . . proposed settlement, and the date of the [formal Rule 23(e)] fairness hearing.

*See also* 2 NEWBERG ON CLASS ACTIONS, §11.24 (3d ed. 1992). The standard for final approval of a class action settlement is whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). In weighing whether to grant preliminary approval, courts must

---

class certified, but would not be allowed a second opportunity to opt out) (attached hereto as Exhibit 1).

4

determine whether giving notice is justified by the parties' showing that the court will likely be able to ultimately approve the proposed settlement under Rule 23(e)(2).

## V. THE COURT IS LIKELY TO APPROVE THE SETTLEMENT UNDER 23(e)(2)

To determine whether to approve a proposed settlement, courts look to the factors in Rule 23(e)(2). *See* Fed. R. Civ. P. 23(e)(2) ("If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering" the factors set forth in Rule 23(e)(2)); *see, e.g.*, *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019). Rule 23(e)(2) requires courts to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Factors (A) and (B) constitute the "procedural" analysis factors and examine "the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. Factors (C) and (D) constitute the "substantive" analysis factors and examine "[t]he relief that the settlement is expected to provide to class members...." *Id.*

5

Because the proposed Settlement Agreement with Golden Peanut easily satisfies all Rule 23(e)(2) factors, Plaintiffs respectfully submit that the Court should preliminarily approve the proposed Settlement Agreement.

### 1. The Class Representatives and Class Counsel Have Adequately Represented the Class

Fed. R. Civ. P. 23(e)(2)(A) requires that "the class representatives and class counsel have adequately represented the class." The adequacy requirement is met when (1) the named plaintiffs or class representatives do not have interests antagonistic to those of the class; and (2) plaintiffs' attorneys are "qualified, experienced, and generally able to conduct the litigation." *NeuStar Inc. Sec. Litig.*, 2015 WL 5674798, at *4 (E.D. Va. Sept. 23, 2015).

As the Court previously held in connection with its Class Certification Order, both requirements are satisfied here.[6] The interests of the Class members are aligned with those of the Class Representatives, as they all share an overriding interest in obtaining the largest possible monetary recovery. *See, e.g.*, *In re Community Bank of N. Virginia Mortg. Lending Practices Litig.*, 795 F.3d 380, 394 (3d Cir. 2015) (no fundamental intra-class conflict to prevent class certification where all class members pursuing damages under the same statutes and the same theories of liability); *In re Corrugated Container Antitrust Lit.*, 643 F.2d 195, 222 (5th Cir. 1981), cert. denied, 456 U.S. 998 (1982) (certifying settlement class and holding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes"). Although Class Counsel will be seeking service awards for the Class Representatives, who were integral to the successful prosecution of this litigation and the

---

[6] Moreover, Defendants did not raise any challenge under the parallel Rule 23(a) adequacy factors in their opposition to Plaintiffs' motion for class certification. (ECF No. 257).

6

resulting $102.75 million aggregate Settlement Fund, the claims of the Class Representatives will be treated the same as the claims of all other Class members.

Further, Plaintiffs have litigated this case vigorously and skillfully, as evidenced by the $102.75 million aggregate Settlement Fund. "The inquiry into the adequacy of legal counsel focuses on whether counsel is competent, dedicated, qualified, and experienced enough to conduct the litigation and whether there is an assurance of vigorous prosecution." *NeuStar*, 2015 WL 5674798, at *5. As the Court previously held, Interim Co-Lead Counsel are qualified, experienced in antitrust class action litigation, and well familiar with the relevant facts and law in this case, all of which has allowed them to obtain an excellent result for the Class's benefit. Accordingly, the Class Representatives and Interim Co-Lead Counsel have more than adequately represented the Class.

### 2. The Settlement Is Fair and Resulted from Arm's-Length Negotiations

"The relevant factors in assessing a settlement's fairness are: (1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel" in class action litigation involving the relevant subject matter. *Jiffy Lube Sec. Litig.*, 927 F.2d 155, 59 (4th Cir. 1991). Rule 23(e)(2)(B) also requires that "the proposal was negotiated at arm's length." There is usually a "strong initial presumption" that a proposed settlement is fair and reasonable when it was the result of arm's-length negotiations. *See In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001); *see also* 2 NEWBERG ON CLASS ACTIONS, § 11.40 at 451 (2d ed. 1985).

As the product of vigorous arm's-length settlement negotiations between experienced and skilled counsel on both sides, which were ultimately facilitated by the assistance of an experienced mediator, the proposed Settlement Agreement is an excellent result and easily meets

7

the standards for preliminary approval. (Clark Decl. ¶¶ 11,16). As discovery has been closed for months, class certification has been decided, summary judgment is fully briefed, and this case was ready for trial in January 2021 and approaching the re-scheduled trial in June 2021, the case is more than sufficiently advanced to permit counsel and the Court to meaningfully evaluate the merits of the Settlement Agreement. *See In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 258 (E.D. Va. 2009) ("[I]n cases in which discovery has been substantial and several briefs have been filed and argued, courts should be inclined to favor the legitimacy of a settlement.").

While Plaintiffs believe that their case is strong, there are numerous costs, risks and hurdles associated with continuing this complex antitrust litigation, and this Settlement Agreement provides significant, timely, and certain benefits to the Class. (*Id.* ¶ 16).

In sum, the Settlement Agreement: (1) provides substantial and certain benefits to the Class; (2) is the result of arm's-length, good faith negotiations between knowledgeable and skilled counsel, which were facilitated by an experienced mediator; (3) was entered into after extensive factual investigation and legal analysis; and (4) in the opinion of experienced Class Counsel, is fair, reasonable, and adequate to the Class. Accordingly, Interim Co-Lead Counsel believe that the Settlement Agreement is in the best interests of the Class and should be preliminarily approved by the Court.

### 3. The Relief Provided For the Class Is Substantial and Tangible

In assessing whether the Settlement Agreement provides adequate relief for the Class under Rule 23(e)(2)(C), the Court should consider: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the Class, including the method of processing Class member claims, if required; (iii) the terms of any proposed award of attorney's fees; and (iv) any agreement required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C)(i–iv).

"Settlement is favored if settlement results in substantial and tangible present recovery, without the attendant risk and delay of trial." *See, e.g.*, *Interchange Fee*, 330 F.R.D. at 36 (citations omitted). Here, for the reasons described above in Section V(2), the Settlement Agreement is fair and resulted from arm's-length negotiations. Interim Co-Lead Counsel thoroughly evaluated the relative strengths and weaknesses of their litigation position; determined that the Settlement Agreement brings substantial and certain benefits to the Class; and avoids the delay and uncertainty of continuing litigation against Golden Peanut. (*See* Clark Decl. ¶¶ 10, 16). The benefits of this Settlement Agreement, in light of the substantial costs and risks associated with continued litigation against Golden Peanut, heavily weigh in favor of granting preliminary and final approval.

### 4. The Proposed Settlement Treats Class Members Equitably Relative to Each Other

Consideration under this Rule 23(e)(2) factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.

Here, this proposed Settlement Agreement treats Class Representatives the same as all other Class members. The release applies uniformly to putative Class members and does not affect the apportionment of the relief to Class members. Accordingly, this factor weighs in favor of granting final approval. *See, e.g.*, *Interchange Fee*, 330 F.R.D. at 47.

## VI. THE COURT SHOULD AUTHORIZE DISSEMINATION OF NOTICE TO THE CLASS

Rule 23(e) requires that prior to final approval, notice of a proposed settlement be given in a reasonable manner to all class members who would be bound by such a settlement. For either a litigation or settlement class proposed under Rule 23(b)(3), Rule 23(c)(2)(B) enumerates

9

specific requirements. Assuming the Court preliminarily approves the proposed Settlement Agreement between Plaintiffs and Golden Peanut, Interim Co-Lead Counsel plan on using the same Notice Program the Court previously approved in connection with the Olam and Birdsong settlements. Pursuant to Rule 23(c)(2)(B), the proposed Notice Program will provide due process and reasonable notice to all Class members.[7]

### A. **Legal Standard**

Notice to the Class must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem Prods. V. Windsor*, 521 U.S. 591, 617 (1997), *quoting* Fed. R. Civ. P. 23(c)(2). The notice may be provided by "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2); *see also Stoller v. Baldwin-United Corp.*, 650 F. Supp. 341, 343-44 (S.D. Ohio 1986) (approving combination of mailing and publication). Rule 23(c)(2)(B) states:

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion;[8] (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). The form of notice is "adequate if it may be understood by the average class member." 4 *Newberg on Class Actions* § 11.53 (4th ed. 2002).

---

[7] In connection with the Olam and Birdsong settlements, the Court previously appointed Angeion Group to serve as the Settlement Administrator and The Huntington National Bank to serve as the Escrow Agent. Plaintiffs propose that Angeion and Huntington respectively continue in their roles as Settlement Administrator and Escrow Agent in connection with the Settlement Agreement with Golden Peanut.

[8] Because Class members already had the opportunity to exclude themselves from the certified litigation Class and elected not to do so, they will not have the opportunity to exclude themselves again. *See* Footnote 5, *supra*.

### B. The Proposed Notice Program Satisfies Rule 23

As noted above, Plaintiffs propose to use the same Notice Program that the Court previously approved in connection with the Olam and Birdsong settlements.[9] This Notice Program provides notice to Class members in multiple forms, including mailed notice, email notice, publication notice, and a press release.[10] As the Court previously held, this comprehensive Notice Program comports with due process and satisfies the requirements of Rule 23 by providing the best notice practicable to the Class.

There is one difference between the Notice Program proposed now and the Notice Program previously approved by the Court, which is due to this Settlement Agreement resolving the case with the last remaining Defendant, thus effectively ending the case. Therefore, the present Notice Program will include sending to Class members, in addition to the Notice, a claim form with pre-printed sales data that will explain the claims process that Class members need to follow to receive their pro rata share of the Settlement Fund.[11]

### VII. PROPOSED TIMELINE FOR NOTICE AND FINAL APPROVAL

Plaintiffs propose the following schedule for disseminating notice to the Class:

1. Within twenty-eight (28) days of the date of entry of an order preliminarily approving the Golden Peanut Settlement Agreement and authorizing dissemination of notice ("Preliminary Approval and Notice Order"), Notice shall be mailed by first class mail, postage

---

[9] Drafts of the proposed Long-Form Notice, Summary Notice, Press Release, Internet Ads, and Claim Form are attached for the Court's review and approval. *See* Exhibit 2.

[10] As Plaintiffs are proposing to use an identical Notice Program for the Golden Peanut Settlement Agreement, Plaintiffs incorporate by reference the pleadings they previously filed in support of the Notice Program approved by the Court in connection with the Olam and Birdsong settlements. *See* (ECF Nos. 497, 501, 504, and 516).

[11] Upon completion of the claims process, Interim Co-Lead Counsel will submit to the Court a proposed plan of distribution based on the *pro-rata* share of each submitted claim from a Class member.

prepaid, to all Class members, and shall be posted on the website dedicated to this litigation (www.PeanutFarmersAntitrustLitigation.com).

2. Within thirty-five (35) days of the date of entry of the Preliminary Approval and Notice Order, the Summary Notice shall be emailed to all Class members for whom email addresses are available.

3. Within thirty-five (35) days of the date of entry of the Preliminary Approval and Notice Order, or as soon thereafter as such publications' deadlines allow, the Summary Notice shall be published in various publications likely to be viewed by Class members and the Peanut industry.

4. Within thirty-five (35) days of the date of entry of the Preliminary Approval and Notice Order, a press release regarding the Golden Peanut Settlement Agreement shall be issued.

5. No later than forty-five (45) days after the date of entry of the Preliminary Approval and Notice Order, Interim Co-Lead Counsel shall file (a) a motion for final approval of the Golden Peanut Settlement Agreement and (b) a motion for attorneys' fees, unreimbursed litigation costs and expenses, and service awards for the Class Representatives, pursuant to the terms of the Settlement Agreement.

6. Any objections by Class members to the Golden Peanut Settlement Agreement or to Interim Co-Lead Counsel's request for attorneys' fees, unreimbursed litigation costs and expenses, and service awards to the Class Representatives must (a) be submitted in writing, (b) be filed with the Clerk of Court, (c) be postmarked no later than sixty (60) days after Notice was mailed to the Class pursuant to Section VII(1), and (d) otherwise comply with the requirements set forth in the Notice.

7.  At least ten (10) days before the Fairness Hearing, Interim Co-Lead Counsel shall file with the Court a declaration of the person(s) responsible for directing the Notice Program approved by the Court, showing that Notice was provided to the Class in accordance with the Notice Order.

## VIII. CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court:

(1) Preliminarily approve the Settlement Agreement;

(2) Appoint D&M Farms, Mark Hasty, Dustin Land, Lonnie Gilbert, Daniel Howell and Rocky Creek Farms as representatives of the Class;

(3) Formally appoint Interim Co-Lead Counsel as Co-Lead Counsel for the Class;

(4) Formally appoint Interim Liaison Counsel as Liaison Counsel for the Class;

(5) Authorize the dissemination of notice to the Class; and

(6) Schedule a date for the Fairness Hearing.[12]

---

[12] Given the need for the Fairness Hearing to take place no earlier than 90 days after notice is mailed out to appropriate state and federal officials under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b), the earliest date a Fairness Hearing can likely take place is June 21, 2021.

Dated:  March 11, 2021    Respectfully submitted,

  */s/   Kevin J. Funk*
Wyatt B. Durrette, Jr. (VSB No. 04719)
Kevin J. Funk (VSB No. 65465)
**DURRETTE, ARKEMA, GERSON & GILL PC**
Bank of America Center
1111 East Main Street, 16th Floor
Richmond, VA 23219
Tel: (804) 775-6900
Fax: (804) 775-6911
wdurrette@dagglaw.com
kfunk@dagglaw.com

Brian D. Clark (MN No. 00390069)
(admitted *pro hac vice*)
W. Joseph Bruckner (MN No. 0147758)
(admitted *pro hac vice*)
Simeon A. Morbey (MN No. 0391338)
(admitted *pro hac vice*)
Stephanie A. Chen (MN No. 0400032)
(admitted *pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
Fax: (612) 339-0981
wjbruckner@locklaw.com
bdclark@locklaw.com
samorbey@locklaw.com
sachen@locklaw.com

Kimberly A. Justice (PA No. 85124)
(admitted *pro hac vice*)
Jonathan M. Jagher (PA No. 204721)
(admitted *pro hac vice*)
**FREED KANNER LONDON & MILLEN LLC**
923 Fayette Street
Conshohocken, PA 19428
Tel: (610) 234-6487
Fax: (224) 632-4521
kjustice@fklmlaw.com
jjagher@fklmlaw.com

William H. London (IL No. 6196353)
(admitted *pro hac vice*)
Douglas A. Millen (IL No. 6226978)
(admitted *pro hac vice*)
Michael E. Moskovitz (IL No. 6237728)
(admitted *pro hac vice*)
Robert J. Wozniak (IL No. 6288799)
(admitted *pro hac vice*)
Brian M. Hogan (IL No. 6286419)
(admitted *pro hac vice*)
**FREED KANNER LONDON & MILLEN LLC**
2201 Waukegan Road, #130
Bannockburn, IL 60015
Tel: (224) 632-4500
Fax: (224) 632-4521
dmillen@fklmlaw.com
mmoskovitz@fklmlaw.com
rwozniak@fklmlaw.com
bhogan@fklmlaw.com

Jeffrey J. Corrigan (NY No. 2372654)
(admitted *pro hac vice*)
Jeffrey L. Spector (PA No. 207208)
(admitted *pro hac vice*)
**SPECTOR ROSEMAN & KODROFF, P.C.**
Two Commerce Square
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel.: (215) 496-0300
Fax: (215) 496-6611
jcorrigan@srkattorneys.com
jspector@srkattorneys.com

*Counsel for Plaintiffs*

15

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 11, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically e-mail notification of such filing to all counsel of record.

To the best of my knowledge, there are no other attorneys or parties who require service by U.S. Mail.

                                       */s/   Kevin J. Funk*
                                       Kevin J. Funk (VSB No. 65465)
                                       **DURRETTE, ARKEMA, GERSON & GILL PC**
                                       Bank of America Center
                                       1111 East Main Street, 16th Floor
                                       Richmond, VA 23219
                                       Tel: (804) 775-6900
                                       Fax: (804) 775-6911
                                       kfunk@dagglaw.com