IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED
JUL 27 2021
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN RE PEANUT FARMERS ANTITRUST LITIGATION

Case No. 2:19-cv-00463

# MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Motion for Final Approval of Settlement and Plan of Distribution of Settlement Fund. ECF No. 598. On April 23, 2021, the Court granted Preliminary Approval for the Golden Peanut Settlement. ECF No. 595. On Monday, July 26, 2021, the Court held a Settlement Fairness Hearing. ECF No. 605. For the reasons stated below, Plaintiffs' Motion for Final Approval of Settlement and Plan of Distribution of Settlement Fund is **GRANTED**.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiffs D&M Farm, Mark Hasty, Dustin Land, Rocky Creek Peanut Farms, LLC, Daniel Howell, and Lonnie Gilbert, individually and on behalf of all others similarly situated (collectively "Plaintiffs") filed their initial complaint on September 5, 2019 against Defendants Birdsong Corporation and Golden Peanut Company LLC. ECF No. 1. Plaintiffs filed a Second Amended Class Action Complaint (the "Complaint") on May 27, 2020, in which they added Olam Peanut Shelling Company, Inc. as a defendant. ECF No. 148. Birdsong, Golden Peanut, and Olam are collectively referred to herein as "Defendants." Plaintiffs are a group of peanut farmers who sell raw, harvested runner peanuts to the Defendants (also known as "shellers") to be processed and sold to food companies or other manufacturers. *Id.* at 1. From approximately 2011 to 2013, "the Peanut industry experienced drastic weather-related price changes that made it difficult for

1

Defendants [...] to manage risk and plan for production." *Id.* at 2. Since in or around January 2014, "the prices paid by shellers to Peanut farmers for Runner[] [peanuts] have remained remarkably flat and unchanged, despite significant supply disruptions" such as hurricanes. *Id.* Because of this significant difference in pricing norms within the industry, Plaintiffs accuse Defendants of "conspir[ing] and collud[ing] with one another to stabilize and depress Runner [peanut] prices." *Id.*

According to the Complaint, Defendants used their 80-90% market share in the peanut shelling industry to facilitate a price fixing conspiracy to depress the price of runner peanuts. *Id.* at 1. Plaintiffs seek a single claim for relief, on behalf of a nationwide class, under Section 1 of the Sherman Antitrust Act. *Id.* at 36. The purported class included "[a]ll farmers who sold Runner Peanuts to Defendants or their co-conspirators in the United States from at least as early as January 1, 2014 until the present." *Id.* at 33.

On December 2, 2020, the Court certified the following class:

> "All persons or entities in the United States who sold raw, harvested runner peanuts to any of the Defendants, their subsidiaries or joint-ventures, from January 1, 2014 through December 31, 2019 (the "Class Period"). Specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant."

ECF No. 496.

On April 23, 2021, the Court preliminarily approved the settlement with Golden Peanut and authorized the issuance of notice to the Class. ECF No. 595. On July 26, 2021, the Court held a Fairness Hearing, during which the parties reported no objections to the settlement from any prospective class members. ECF No. 605. Plaintiffs had previously reported that of the 9,369 potential class members, three individuals and/or entities elected to opt out of the class action. ECF No. 582 at 1. Having notified the prospective class and with no outstanding objections,

2

Plaintiffs' Motion for Final Approval of Settlement is ripe for judicial determination.

## II. LEGAL STANDARD

### A. The Legal Standard for Class Action Settlements

Rule 23(e) of the Federal Rules of Civil Procedure provides that no class action "shall... be dismissed or compromised without the approval of the court." To that end, "[t]he approval of a proposed settlement agreement is in the sound discretion of the Court." *Strong v. JHM Mortgage Sec. Ltd. P'ship*, 890 F. Supp. 499, 501 (E.D. Va. 1995) (citations omitted). Furthermore, for the Court to approve a class action settlement, that proposed settlement must be "fair, adequate and reasonable to Class Members." Fed. R. Civ. P. 23(e)(2); *see also In re: Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices and Prods. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020) ("considerable deference" given to trial court in determining whether "to approve a class-action settlement as fair, reasonable, and adequate") (internal citation omitted). "[T]here is a strong initial presumption that the compromise is fair and reasonable." *In re Microstrategy, Inc. Sec. Litig.*, 148 F.Supp.2d 654, 663 (E.D. Va. 2001) ("*MicroStrategy I*"). Courts are to "appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986).

Furthermore, Rule 23(e)(2) lists various factors to consider when determining the fairness, reasonableness, and adequacy of parties' settlements. These factors include whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>     (i) the costs, risks, and delay of trial and appeal;
>     (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>     (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

>    (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. Rule 23(e)(2).

Additionally, the United States Court of Appeals for the Fourth Circuit provides district courts with a two-level analysis when evaluating a settlement's fairness and adequacy. *In re Jiffy Lube Securities Litigation*, 927 F.2d 155, 158-59 (4th Cir. 1991). First, the relevant factors in assessing a settlement's fairness are:

> "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of [that] class action litigation."

*Jiffy Lube*, 927 F.2d at 159. Next, a settlement's adequacy is determined by:

> "(1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expenses of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement."

*Id.* After the Fourth Circuit created its fairness and adequacy factors, the Rule 23(e)(2) factors listed above were added to the Federal Rules of Civil Procedure on December 1, 2018. *See Cantu-Guerrero v. Lumber Liquidators, Inc.*, 952 F.3d 471, n.8 (4th Cir. 2020). The Fourth Circuit acknowledges in *Cantu-Guerrero v. Lumber Liquidators, Inc.* that "because our factors for assessing class-action settlements almost completely overlap with the new Rule 23(e)(2) factors, the outcome[s] [are] the same under both our factors and the Rule's factors." *Id.* Taking this substantial overlap into consideration, the Court will examine Plaintiffs' Motion for Settlement based upon the Rule 23(e)(2) factors.

4

## III. DISCUSSION

In assessing the parties' proposed settlement, the Court notes that neither Golden Peanut nor any Class members objected to Plaintiffs' Motion for Final Approval of the settlement. Nonetheless, the Court will apply the Rule 23(e)(2) factors to the parties proposed settlement to ensure "protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." *Jiffy Lube*, 927 F.2d at 158. The following analyzes each factor within Rule 23(e)(2).

***A. The class representatives and class counsel have adequately represented the class.***

Upon review, the Court finds that Plaintiffs' class representatives – D&M Farm, Mark Hasty, Dustin Land, Rocky Creek Peanut Farms, LLC, Daniel Howell, and Lonnie Gilbert – adequately represent the class. As is standard in all class action litigation, it is imperative that the named plaintiffs and the class "share common objectives and the same factual and legal positions," ensuring that there are no "fundamental" conflicts that go to the "heart of the litigation." *Gunnells v. Healthplan Sers., Inc.*, 348 F.3d 417, 430-31 (4th Cir. 2003).

Here, the named Plaintiffs are a group of peanut farmers who sell raw, harvested runner peanuts to the Defendants. As persons and entities who fall squarely within the certified class, the Court finds no evidence to suggest that the interests of the named Plaintiffs in any way contradicts those of the certified class.

Additionally, counsel for Plaintiffs have appeared before the Court in this matter for over a year and half. In that time, the Court has found counsel to be adequate and capable of competently adjudicating the class's claims. Accordingly, the requirements for subsection (A) of Rule 23(e)(2) are met.

### B. *The proposal was negotiated at arm's length.*

The parties were at all times represented by counsel in this action. The parties also had completed fact and expert discovery and, thus, were acutely aware of strengths and weaknesses of their respective cases at the time of settlement negotiations. ECF No. 599 at 10. Finally, Plaintiffs and Defendant Golden Peanut engaged a nationally renowned mediator to reach the proposed settlement. Accordingly, the requirements for subsection (B) of Rule 23(e)(2) are also satisfied.

### C. *The relief provided for the class is adequate.*

Plaintiffs and Defendant Golden Peanut have agreed to a settlement $45,000,000. Pursuant to Rule 23(e)(2), when considering the adequacy of relief, the Court will examine factors such as: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, (iii) the terms of any proposed award of attorney's fees; and (iv) any agreement required to be identified under Rule 23(e)(3).

With regard to factors (iii) and (iv), there are no additional agreements pursuant to Rule 23(e)(3) for the Court to address and the parties did not negotiate attorneys' fees in connection with the proposed settlement. *See* ECF No. 599 at 14-16. Further, the settlement is not contingent on the Court's award of attorneys' fees. *Id.*

Turning to the costs, risks, and any potential delay of trial and appeal, adjudication of Plaintiffs' claims has already proven costly. Plaintiffs submitted an affidavit to the Court detailing their costs accrued thus far in litigation. ECF No. 530. These costs include, but are not limited to, costs of nearly $1.4 million for experts and over $125,000 for jury consultation and trial graphics. *Id.* Additionally, inherent in all litigation is risk which certainly impacts that settlement total. Moreover, future appeals of any jury outcome are not only possible, but likely given the amount of money at stake. In sum, any further litigation of this case would be lengthy, complex, and

expensive, making settlement favorable to the Class. *See MicroStrategy I*, 148 F. Supp. 2d at 667 (where the court granted plaintiffs' motion for settlement, in part, because "additional litigation of plaintiffs' claims... would likely have been protracted and costly, requiring extensive expert testimony. [Additionally,] there is little doubt that a jury verdict for either side would only have ushered in a new round of litigation in the Fourth Circuit and beyond, thus extending the duration of the case and significantly delaying any relief for plaintiffs.").

Lastly, Plaintiffs proposed method of distribution is "that the Settlement Fund, plus accrued interest, will be allocated among approved claimants according to the amount of their recognized sales of Runner Peanuts to Defendants during the Class Period, after payment of attorneys' fees, litigation and administration costs and expenses, and service awards for Class Representatives." ECF No. 599 at 19. This type of distribution plan is commonly referred to as a *pro rata* distribution plan which has been previously approved by the Court in similar class action litigation. *See MicroStrategy I*, 148 F. Supp. 2d at 668 (where the court approved plaintiffs' *pro rata* distribution noting that such distribution plans "generally treat[] all class members' losses in the same way."). Moreover, the plan does not award additional funds to any one type of plaintiff and ensures fair treatment of each member of the class. Accordingly, Plaintiffs' *pro rata* distribution method is fair and reasonable. In sum, the terms of the parties' settlement appear to adequately provide relief to the Class.

### D. *The proposal treats class members equitably relative to each other.*

The Court, having previously certified the class in Plaintiffs' cause of action, now turns to whether the settlement proposals will treat class members equitably. The class will be issued an award based upon the amount of their individually recognized sales of runner peanuts. This type of distribution is fair and equitable as to ensure that class members are not over- or under

compensated for any alleged harm. Importantly, however, Plaintiffs' counsel has sought a service award for the class representatives. ECF No. 600. "Service awards are 'intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and sometimes, to recognize their willingness to act as a private attorney general.'" *Galloway v. Williams*, No. 3:19-cv-470, 2020 WL 7482191, at *6 (E.D. Va. Dec. 18, 2020) (quoting *Berry v. Schulman*, 807 F.3d 600, 613 (4th Cir. 2015)). Generally, "[c]ourts recognize the purpose and appropriateness of service awards to Class Representatives." *See In re: Interior Molded Doors Antitrust Litigation*, No. 3:18-cv-00718-JAG (E.D. Va. June 3, 2021) (awarding $75,000 service award to each named plaintiff); *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 578 (E.D. Va. 2016). Should the Court grant a service award to the class representatives, the reward will be fair and reasonable in accordance with the requirements under Rule 23(e)(2). Therefore, the proposed Golden Peanut class settlement treats class members equitably relative to one another.

## IV. CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Final Approval of Settlement with Defendant Golden Peanut and Plan of Distribution of Settlement Fund is **GRANTED**. The Clerk is DIRECTED to provide a copy of this Memorandum Opinion and Order to counsel of record.

**IT IS SO ORDERED.**

Norfolk, Virginia
July 26, 2021

Raymond A. Jackson
United States District Judge