FILED

AUG 1 0 2021

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

IN RE PEANUT FARMERS ANTITRUST
LITIGATION

Case No.  2:19-cv-00463

**Honorable Raymond A. Jackson**
**Honorable Lawrence R. Leonard**

**ORDER**

AND NOW, upon consideration of Plaintiffs' Motion for an Award of Attorneys' Fees and

Expenses and for Class Representative Service Awards (the "Motion"), the Memorandum in

support thereof, and the declarations and exhibits attached thereto, and following a hearing on the

Motion, it is hereby ORDERED that the Motion is GRANTED:

     1.     Under Fed. R. Civ. P. 23(h), "[i]n a certified class action, the court may award

reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties'

agreement." As the Supreme Court recognized, "a lawyer who recovers a common fund for the

benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the

fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Court has considered

the relevant case law and authority and finds that awards of attorneys' fees and reimbursement of

litigation costs and expenses to the Plaintiffs and their counsel are appropriate under Fed. R. Civ.

P. 23(h) and Fed. R. Civ. P. 54(d)(2).

     2.     Two methods of calculating attorneys' fees in class actions are: (1) the percentage-

of-the-fund method; and (2) the lodestar method. *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246,

260 (E.D. Va. 2009). The percentage-of-the-fund method involves an award based on a percentage

of the Class's recovery, set by the Court based on several factors. *Id*. The lodestar method requires

multiplying the number of hours worked by a reasonable hourly rate, the product of which the Court can then adjust by employing a "multiplier." *Id.*

3.      The Supreme Court has suggested that percentage-of-the-fund is the appropriate method for awarding fees under the common fund doctrine. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class . . . ."). Most federal courts of appeals have also endorsed the percentage-of-the-fund method as an appropriate method for determining an award of attorneys' fees in common fund cases. "While the Fourth Circuit has not definitively answered this debate, other districts within this Circuit, and the vast majority of courts in other jurisdictions consistently apply a percentage of the fund method for calculating attorneys' fees in common fund cases." *Mills*, 265 F.R.D. at 260; *see, e.g., Manuel v. Wells Fargo Bank, Nat'l Ass'n*, No. 3:14CV238 (DJN), 2016 WL 1070819, at *5 (E.D. Va. Mar. 15, 2016) ("District Courts within this Circuit have also favored the percentage method."); *Krakauer v. Dish Network, L.L.C.*, No. 1:14-cv-333, 2018 WL 6305785, at *2 (M.D.N.C. Dec. 3, 2018) ("District courts in the Fourth Circuit overwhelmingly prefer the percentage method in common-fund cases . . . ."); *Archbold v. Wells Fargo Bank, N.A.*, No. 3:13-CV-24599, 2015 WL 4276295, at *5 (S.D.W. Va. July 14, 2015) ("[T]here is a clear consensus among the federal and state courts, consistent with Supreme Court precedent, that the award of attorneys' fees in common fund cases should be based on a percentage of the recovery."); *Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 502 (E.D. Va. 1995) ("Although the Fourth Circuit has not yet ruled on this issue, the current trend among the courts of appeal favors the use of a percentage method to calculate an award of attorneys' fees in common fund cases."); *Jones v. Dominion Res. Servs.*, 601 F. Supp. 2d 756, 758 (S.D.W. Va. 2009) ("The percentage method has overwhelmingly become the preferred method for calculating attorneys'

2

fees in common fund cases."). These courts recognize that the percentage-of-fund method is "more efficient and less burdensome than the traditional lodestar method, and offers a more reasonable measure of compensation for common fund cases." *Strang*, 890 F. Supp. at 503. It also better aligns the interests of class counsel and class members because it ties the attorneys' fees award to the overall result achieved, rather than hours expended by the attorneys. *Thomas v. FTS USA, LLC*, No. 3:13-cv-825 (REP), 2017 WL 1148283, at *3 (E.D. Va. Jan. 9, 2017), *report and recommendation adopted*, 2017 WL 1147460 (E.D. Va. Mar. 27, 2017); *see also Deem v. Ames True Temper, Inc.*, No. 6:10-CV-01339, 2013 WL 2285972, at *5 (S.D.W. Va. May 23, 2013) ("The percentage method 'is designed to allow courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure.'" (quoting *In re Prudential Ins. Co. Am. Sales Litig.*, 148 F.3d 283, 333 (3d Cir. 1998))). Class Counsel's application for the percentage-of-fund method is therefore consistent with the law in this and other circuits. Thus, the Court will award fees to Plaintiffs' counsel using the percentage-of-fund approach.

4.      As explained below, the factors courts consider when assessing percentage-of-fund requests demonstrate the reasonableness of Class Counsel's requested fee, which is further confirmed by cross-checking the requested amount against the calculated lodestar. "In determining the reasonableness of attorneys' fees, courts look at the following factors: (1) the result obtained for the class; (2) the presence or absence of substantial objections by members of the class to the fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by the plaintiffs' counsel; and (7) awards in similar cases." *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 843 (E.D. Va. 2016). Some district courts in this Circuit have applied a slightly different version of this standard, replacing the sixth factor with public policy

considerations. *See, e.g., In re Celebrex (Celecoxib) Antitrust Litig.*, No. 2:14-CV-00361, 2018 WL 2382091, at *4 (E.D. Va. Apr. 18, 2018); *Mills*, 265 F.R.D. at 261 (citing, *inter alia*, *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)).

      5.     There is some disagreement as to whether to apply these seven factors, which were adopted from the Third Circuit, *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 & n.1 (3d Cir. 2000), or the 12-factor test from the Fifth Circuit adopted in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)).[1] *See Galloway v. Williams*, No. 3:19-CV-470, 2020 WL 7482191, at *5 (E.D. Va. Dec. 18, 2020) (Payne, J.); 5 Newberg on Class Actions § 15:82 (5th ed.) ("The Fourth Circuit utilized the Fifth Circuit's *Johnson* factors in a statutory fee-shifting case, so some district courts have utilized those factors in setting a percentage in common fund cases, while other district courts have used the Second Circuit's *Goldberger* factors and/or the Third Circuit's *Gunter* factors." (footnotes omitted)). However, many of the *Johnson/Barber* factors overlap with factors in the Third Circuit test or are "subsumed in the calculation of the hours reasonably expended and the reasonableness of the hourly rate." *Galloway*, 2020 WL 7482191, at *6, *10-11; *see also Genworth*, 210 F. Supp. 3d at 843 (using the seven-factor Third Circuit test in evaluating the reasonableness of the requested fee and incorporating the *Johnson/Barber* factors into the lodestar cross-check). Notably, "fee award reasonableness factors 'need not be applied in a formulaic way'

---

[1] The *Johnson/Barber* factors are "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases." *Barber*, 577 F.2d at 226 n.28.

4

because each case is different, 'and in certain cases, one factor may outweigh the rest.'" *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 463 (D. Md. 2014) (citations omitted). Given the overlap in the factors, a consideration of the relevant factors under any standard supports Class Counsel's requested fee.

### Class Counsel Obtained an Excellent Result for the Class

6.     "The first and most important factor for a court to consider when making a fee award is the result achieved." *Genworth*, 210 F. Supp. 3d at 843; *see also Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("[T]he most critical factor is the degree of success obtained."); *McKnight v. Circuit City Stores, Inc.*, 14 F. App'x. 147, 149 (4th Cir. 2001) (same). Class Counsel's effective and efficient prosecution of this case through fact and expert discovery, class certification, summary judgment (fully briefed), and trial (fully prepared) resulted in settlements with Olam, Birdsong, and Golden Peanut and the creation of a $102,750,000 Settlement Fund. This is an excellent result for the Class. Not only does it assure that Class members will receive a substantial cash payment to compensate them for their injuries, but it also eliminates the risk of adverse rulings on summary judgment, at trial, or on appeal.

7.     Notably, Class Counsel achieved this result without the benefit of a prior governmental investigation. Many antitrust class actions—especially those alleging price-fixing—follow a government investigation, where the risk in bringing related private action is comparatively limited. *See, e.g., In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 460-61 (D.P.R. 2011) (noting that preceding DOJ investigation and FBI raids mitigated counsel's risk); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 147 (S.D.N.Y. 2010) ("Risk is not uniform in all class actions" and for "certain antitrust class actions filed in the wake of a Department of Justice consent decree . . . . the risk is limited."). Class Counsel investigated this

5

case from the ground up without the benefit of a government investigation, which significantly increased the risk of bringing this action. *See, e.g., In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2008 WL 63269, at *5 (E.D. Pa. Jan. 3, 2008) ("The risk of nonpayment is even higher when a defendants' *prima facie* liability has not been established by the government in a criminal action."). Balanced against the many significant risks and compared to the results achieved in many other price-fixing class action settlements, the settlement value here provides an exceptional result for the Class and supports Class Counsel's request for attorneys' fees.

*No Class Member Objected to Class Counsel's Fee Request*

8.    "A lack of objections by class members as to fees requested by counsel weighs in favor of the reasonableness of the fees." *Genworth*, 210 F. Supp. 3d at 844. The Court-approved notice of the Golden Peanut settlement informed potential Class members that Co-Lead Counsel would request attorneys' fees not to exceed one-third of the Settlement Fund (as well as reimbursement of litigation expenses, and service awards for the Class Representatives). Significantly, not a single Class Member objected to Class Counsel's fee request.

*Class Counsel Litigated the Case Skillfully and Efficiently*

9.    Quality of representation is another significant factor supporting Class Counsel's fee request. As demonstrated by the Court's appointment of Co-Lead Counsel to represent the Class, Class Counsel have substantial experience litigating complex class actions and antitrust cases.[2] Additionally, "the result achieved is the clearest reflection of petitioners' skill and

---

[2] *See* Memorandum in Support of Plaintiffs' Motion to Appoint Interim Co-Lead Class Counsel and Liaison Counsel, supporting declarations of Brian D. Clark, Kimberly A. Justice, and Wyatt B. Durette, Jr., and firm resumes attached as exhibits thereto (ECF Nos. 44, 44-1 through 44-2 through 44-4 through 44-7).

expertise." *In re Linerboard Antitrust Litig.*, MDL No. 1261, 2004 WL 1221350, at *5 (E.D. Pa. June 2, 2004). The creation of the $102,750,000 Settlement Fund speaks volumes.

10.     Further, courts often evaluate the quality of the work performed by plaintiff's counsel in light of the quality of the opposition's representation. *See, e.g.*, *Mills*, 265 F.R.D. at 262 (noting that counsel reached a favorable settlement against "experienced and sophisticated defense attorneys"); *Smith v. Krispy Kreme Doughnut Corp.*, No. 1:05cv00187, 2007 WL 119157, at *2 (M.D.N.C. Jan. 10, 2007) ("Additional skill is required when the opponent is a sophisticated corporation with sophisticated counsel."). Defendants here were represented by highly skilled and experienced antitrust litigators from some of the leading defense law firms in the United States, two of which are ranked among the Vault Law 100 for most prestigious law firms (https://www.vault.com/best-companies-to-work-for/law/top-100-law-firms-rankings). It was in the face of such skilled and vigorous opposition that Class Counsel obtained the benefits for the Class that they did. This factor weighs in favor of the requested fee award.

### *The Duration and Complexity of this Litigation Supports the Requested Fee*

11.     Courts recognize that "there are good reasons to award higher-than-typical fees when the issues in a case are particularly 'novel and complex.'" *Good v. W. Virginia-Am. Water Co.*, No. 14-1374, 2017 WL 2884535, at *25 (S.D.W. Va. July 6, 2017). As to the complexity of the case, "'[a]n antitrust class action is arguably the most complex action to prosecute. . . . The legal and factual issues involved are always numerous and uncertain in outcome.'" *Linerboard*, 2004 WL 1221350, at *10 (quoting *In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1337 (N.D. Ga. 2000)).

12.     "In evaluating the complexity and duration of the litigation, courts consider not only the time between filing the complaint and reaching settlement, but also the amount of motions

7

practice prior to settlement and the amount and nature of discovery." *Jones*, 601 F. Supp. 2d at 761. Class Counsel not only worked extremely hard in pursuit of the Class's claims, but did so efficiently, achieving the settlements in less than two years of hard-fought litigation.[3] Since filing this case in September 2019, Class Counsel (1) fully and successfully briefed an opposition to Defendants' joint motion to dismiss, (2) completed all fact and expert discovery under an aggressive schedule, (3) fully and successfully briefed Plaintiffs' class certification motion; (4) fully briefed oppositions to Defendants' summary judgment motions; and (5) were fully prepared to begin a three-week trial. This case's complexity and duration, combined with Class Counsel's vigorous efforts on behalf of the Class, strongly support the reasonableness of Class Counsel's request.

***Class Counsel Faced the Risk of Nonpayment***

13.     Class Counsel undertook this case on a wholly contingent basis and ran a substantial risk of no recovery whatsoever. The risk of receiving little or no recovery, which was magnified here because there was no preceding DOJ investigation or prosecution, is an important factor courts in this Circuit consider when awarding attorneys' fees. *See, e.g., Mills*, 265 F.R.D. at 263 ("[C]ounsel bore a substantial risk of nonpayment . . . . [t]he outcome of the case was hardly a foregone conclusion, but nonetheless counsel accepted representation of the plaintiff and the class on a contingent fee basis, fronting the costs of litigation." (citation omitted)); *Phillips v. Triad Guar. Inc.*, No. 1:09CV71, 2016 WL 2636289, at *6 (M.D.N.C. May 9, 2016) (finding fee award justified where, "Lead Counsel bore the risks involved with surviving dispositive motions,

---

[3] *See* Dec. 16, 2020 Prelim. Approval Hr'g Tr. 13:25-14:4 ("[T]he Court is aware that there are so many entries in the ECF reflecting the vigorous nature with which [Class Counsel] have pursued this litigation, that the Court has no doubt that counsel has definitely been working this case."); March 25, 2021 Fairness Hr'g Tr. 6:3-4 ("The Court appreciates the efficiency and speed."), 11:19-20 ("I want to thank counsel for efficiently moving through this case . . . .").

obtaining class certification, proving liability, causation, and damages, prevailing with experts, and litigating through trial and possible appeals" knowing "that the only way [they] would be compensated was to achieve a successful result"). In addition to the risk of non-recovery at trial, "any victory at trial in this case would have to withstand appeals which could reverse or limit any award by a jury." *Genworth*, 210 F. Supp. 3d at 844. Courts have also recognized that there is a greater risk of nonpayment where an antitrust class action "did not benefit from the fruits of a prior government investigation," as is the case here. *See Linerboard*, 2004 WL 1221350, at *11. In the face of these risks, Class Counsel vigorously represented Plaintiffs and obtained a substantial recovery on behalf of the Class.

14. Additionally, Class Counsel incurred $1,875,614.86 in total expenses to prosecute the litigation, which would not have been reimbursed absent a successful result. *See Mills*, 265 F.R.D. at 263 (noting uncertainty of the case outcome, defendants' rigorous defense, and that "Lead Counsel devoted thousands of hours on the case and fronted nearly $3 million in costs in the process" to conclude that factor weighed in favor of awarding the requested fee); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 516 (W.D. Pa. 2003) ("Aside from investing their time, counsel had to front copious sums of money . . . . Thus, the risks that counsel incurred in prosecuting this case were substantial and further support the requested fee award."). The risk of nonpayment weighs heavily in favor of the requested fee award.

***Class Counsel Devoted Considerable Time to Prosecute this Action***

15. Class Counsel devoted considerable time and effort researching, investigating, and litigating this case. From the time Class Counsel began its investigation through May 31, 2021, Class Counsel devoted 20,866.3 hours to prosecuting this case. This was time that Class Counsel could have spent litigating other matters, which weighs in favor of awarding the requested fees.

9

*See, e.g., Seaman v. Duke Univ.*, No. 1:15-CV-462, 2019 WL 4674758, at *4 (M.D.N.C. Sept. 25, 2019) (explaining that the "attorneys and staff have worked over 12,500 hours since it began" and "spent over $3 million from their own pockets litigating this case," which "was time and money the attorneys could have directed to other simpler and less risky opportunities" supported the fee request); *Genworth*, 210 F. Supp. 3d at 844-45 (finding that "counsel for plaintiffs devoted an enormous amount of time and effort into this case, totaling more than 66,000 hours and investing more than three million dollars in fees towards consulting experts" to be among the considerations that "support the attorneys' fees award"). The prodigious time and resources Class Counsel committed to this case weigh in favor of the requested fee.

### *Public Policy Considerations Support the Requested Fee*

16.     "[A] central factor in fixing the amount of attorneys' fees is to ensure that competent, experienced counsel will be encouraged to undertake the often risky and arduous task of representing a class . . . ." *Mills*, 265 F.R.D. at 260. "Congress has expressed its belief that private antitrust litigation is one of the surest weapons for effective enforcement of the antitrust laws." *Minnesota Mining & Mfg. Co. v. New Jersey Wood Finishing Co.*, 381 U.S. 311, 318 (1965). In complex cases, fee awards have been enhanced by courts "to provide an incentive for competent lawyers to pursue such actions in the future." *In re Microstrategy, Inc. Sec. Litig.*, 172 F. Supp. 2d 778, 788 (E.D. Va. 2001). Public policy "generally favors attorneys' fees that will induce attorneys to act and protect individuals who may not be able to act for themselves but also will not create an incentive to bring unmeritorious actions." *Jones*, 601 F. Supp. 2d at 765 (citing *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 142 (S.D.N.Y. 2008); *Microstrategy*, 172 F. Supp. 2d at 789 n.36). "The cost and difficulty [of bringing a meritorious complex class action] naturally stands as a deterrent from doing so, and one object of an award of attorneys' fees should be to

10

counteract this deterrence and incentivize competent attorneys to pursue these cases when necessary." *Mills,* 265 F.R.D. at 263; *see also In re Se. Milk Antitrust Litig.,* No. 2:08-MD-1000, 2013 WL 2155387, at *5 (E.D. Tenn. May 17, 2013) ("[F]ailing to fully compensate class counsel for the excellent work done and the various substantial risks taken would undermine society's interest in the private litigation of antitrust cases."). Public policy considerations support awarding the requested fee.

***One-Third of the Settlement Fund is a Typical and Reasonable Fee Award***

17.     A fee award of one-third of the Settlement Fund reflects a real-world arm's length transaction between the Class and Class Counsel and is a generally accepted percentage in the Fourth Circuit. *In re: Interior Molded Doors Antitrust Litig.,* No. 3:18-cv-00718-JAG (E.D. Va. June 3, 2021); *Seaman,* 2019 WL 4674758, at *3; *In re Titanium Dioxide Antitrust Litig.,* No. 10-CV-00318(RDB), 2013 WL 6577029, at *1 (D. Md. Dec. 13, 2013); *In re Polyester Staple Antitrust Litig.,* MDL 3:03CV1516, Order and Final Judgment ¶ 10 (W.D.N.C. June 24, 2008), ECF No. 841; *In re Celebrex (Celecoxib) Antitrust Litig.,* 2018 WL 2382091 (E.D. Va. 2018). It is justified by the remarkable results obtained for the Class and the risks faced by Class Counsel. The fee award requested here is well within the acceptable range of attorneys' fee awards in protracted, complex, and expensive litigation such as this.

18.     Class Counsel's fee request is consistent with awards in similar cases. District courts in this Circuit have frequently found a percentage award of one-third of a common fund to be within the range of reasonable percentage awards. *See, e.g., In re: Allura Fiber Cement Siding Litig.,* 2:19-mn-02886-DCN, 2021 WL 2043531, at *4 (D.S.C. May 21, 2021) ("Courts in the Fourth Circuit have held that attorneys' fees in the amount of 1/3 of the settlement fund are reasonable."); *Muhammad v. Nat'l City Mortg., Inc.,* No. 2:07-0423, 2008 WL 5377783, at *6

(S.D.W Va. Dec. 19, 2008) ("[T]he requested award of one-third of the common fund, plus costs, is reasonable under the circumstances of this case."); *Smith*, 2007 WL 119157, at *2 ("In this jurisdiction, contingent fees of one-third . . . are common.").

19.     In particular, "[a]n award of one-third is also common in antitrust class actions." *Interior Molded Doors Antitrust Litig.*, No. 3:18-cv-00718-JAG; *Seaman*, 2019 WL 4674758, at *3; *see, e.g., In re Anadarko Basin Oil & Gas Lease Antitrust Litig.*, No. CIV-16-209-HE, 2019 WL 1867446, at *2 (W.D. Okla. Apr. 25, 2019) (awarding one-third of $6,950,000 settlement); *In re Domestic Drywall Antitrust Litig.*, No. 13-MD-2437, 2018 WL 3439454, at *20 (E.D. Pa. July 17, 2018) (awarding one-third of $190,059,056 settlement); *In re: Urethane Antitrust Litig.*, No. 04-1616-JWL, 2016 WL 4060156, at *5 (D. Kan. July 29, 2016) (awarding one-third of $835 million settlement, noting "a one-third fee is customary in contingent-fee cases"); *Standard Iron Works v. ArcelorMittal*, No. 08 C 5214, 2014 WL 7781572, at *3 (N.D. Ill. Oct. 22, 2014) (awarding 33% of $163.9 million settlement); *In re OSB Antitrust Litig.*, 2:06-cv-00826-PD, Order at 3 (E.D. Pa. Dec. 9, 2008), ECF No. 947 (approving requested one-third of $120 million settlement fund).

20.     Other courts have determined that a higher percentage rate is appropriate where discovery has been completed and the case is ready for trial. *See Trombley v. Bank of America Corp.*, No. 08-cv-456-JD, 2012 WL 1599041, at *3 n.3 (D.R.I. May 4, 2012) ("Higher percentage rates for attorneys' fees generally are reserved for cases that settle after the completion of formal discovery when the case is close to trial."). Class Counsel reached a settlement with Olam just prior to the close of discovery and reached a settlement with Birdsong *after* the close of discovery and continued preparing for trial against Golden Peanut; and, at the time of the Golden Peanut

settlement, Class Counsel was ready for trial. Accordingly, the one-third award requested by Class Counsel is appropriate.

21.     Courts often rely on academic and government reports to determine the "market price" for class action contingent fees. *See, e.g., In re Cabletron Sys., Inc. Sec. Litig.,* 239 F.R.D. 30, 41-42 (D.N.H. 2006) (relying on "comprehensive studies evaluating fee awards in class action cases" and collecting those studies). Relevant here is a study of 40 antitrust class actions. Robert H. Lande & Joshua P. Davis, *Benefits from Private Antitrust Enforcement: An Analysis of Forty Cases,* 42 U.S.F. L. Rev. 879 (2008). The study shows that courts in the majority of antitrust class actions awarded a contingent fee of 30% or more where the recoveries were up to $100 million. *Id.* at 911. The median fee was 33.3% and the average was 28.2%. *Id.* The majority of courts in antitrust class actions where the recoveries ranged from $100 million to $500 million also awarded attorney's fees of 30% or more of the fund. *Id.* A more recent study found the same results. Joshua P. Davis & Robert H. Lande, *Toward an Empirical and Theoretical Assessment of Private Antitrust Enforcement,* 36 Seattle U. L. Rev. 1269, 1293 (2013) ("[I]n the twenty newer cases counsel tended to recover approximately 30% to 33.3% in cases with recoveries below $100 million and a similar or smaller percentage in cases with recoveries between $100 and $500 million . . . ."). These studies also support Class Counsel's fee request.

*A Cross-Check of Class Counsel's Lodestar Confirms the Reasonableness of the Fee Request*

22.     Although not required, Courts sometimes supplement their analysis of the percentage-of-fund method with the lodestar cross-check. "The purpose of a lodestar cross-check is to determine whether a proposed fee award is excessive relative to the hours reportedly worked by counsel, or whether the fee is within some reasonable multiplier of the lodestar." *Boyd,* 299 F.R.D. at 467. "A lodestar cross-check first computes the plaintiffs' attorneys' reasonable hourly

rate for the litigation and multiplies that rate by the number of hours dedicated to the case," and "then compares that figure with the attorneys' fees award, typically resulting in a positive multiplier." *Genworth*, 210 F. Supp. 3d at 845. When using the lodestar as a cross-check, courts "take a somewhat truncated approach to the lodestar analysis" and "generally do not apply the same scrutiny in a lodestar cross-check as they do when using the lodestar method to calculate the fee." *Thomas*, 2017 WL 1148283, at *6; *see also Jones*, 601 F. Supp. 2d 765 (explaining that when "using the lodestar method as a cross-check," the court "need not apply the 'exhaustive scrutiny' normally required by that method").

23. A lodestar cross-check in this case supports the requested fee. Despite the risks, complexities, and challenges posed by this litigation, Class Counsel invested 20,866.3 hours of attorney and other professional time on behalf of the Class from case inception through May 31, 2021. The work by Class Counsel was non-duplicative and performed at the direction of Co-Lead Counsel, who also audited and confirmed the validity of Class Counsels' time and expense submissions and removed unapproved hours (and hours inconsistent with the Court's fee orders in prior cases) and expenses where appropriate.

24. The historical hourly rates charged by Class Counsel are reasonable, based on each person's position, experience level, and location (and Co-Lead Counsel capped the hourly rate of attorneys conducting first-level document review at $350), and have been approved by multiple courts in similar antitrust class actions. These rates are comparable to the rates charged by other law firms with similar experience, expertise, and reputation, for similar services in the nation's leading legal markets. *See, e.g., Seaman*, 2019 WL 4674758, at *5 (listing comparable rates from national class action firm based in San Francisco). *See, e.g., Seaman*, 2019 WL 4674758, at *5 (listing comparable rates from national class action firm based in San Francisco).

25.     Class Counsel's lodestar is $11,716,258.50. Awarding Class Counsel one-third of the Settlement Fund would result in a fee award of $34,250,000, which would be a multiplier of 2.92. Such a multiplier is well within accepted ranges for antitrust class actions generally and is consistent with the fee rulings in similar cases within the Fourth Circuit. Indeed, "[d]istrict courts within the Fourth Circuit have regularly approved attorneys' fees awards with 2–3 times lodestar multipliers." *Genworth*, 210 F. Supp. 3d at 845; *see, e.g.*, *Titanium Dioxide*, 2013 WL 6577029 (court awarded attorneys' fees of one-third of settlement fund, which resulted in a multiplier of 2.39); *In re Massey Energy Co. Sec. Litig.*, 3:12–cv–004560, Order Awarding Attorneys' Fees and Expenses at 2 (S.D.W. Va. June 4, 2014), ECF No. 203 (approving a 2.9 times lodestar multiplier); *Microstrategy*, 172 F. Supp. 2d at 789 (approving a 2.6 times lodestar multiplier); *Deloach v. Philip Morris Cos.*, No. 1:00CV01235, 2003 WL 23094907, at *11 (M.D.N.C. Dec. 19, 2003) (approving a 4.45 times lodestar multiplier); *Seaman*, 2019 WL 4674758, at *6 (approving a 2.89 times lodestar multiplier); *see also Singleton*, 976 F. Supp. 2d at 689 ("Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee."). Further, the Court recognizes that the lodestar figure above does not include the substantial amount of time that Class Counsel will be required to devote to overseeing the claims administration process and the distribution of settlement funds to the Class. These additional hours, for which Class Counsel will not receive any additional compensation from the Settlement Fund, effectively reduce the multiplier, and have been considered by the Court in evaluating the reasonableness of the fee request. Consideration of all the lodestar cross-check factors confirms the reasonableness of the requested fee.

### *Class Counsel's Request for Reimbursement of Litigation Expenses is Reasonable*

26.     Class Counsel also request reimbursement of reasonable and necessary litigation

15

costs in the amount of $7,688.02. As set forth in the Clark Decl., ¶¶ 62-64, invoices for these costs and expenses were received after the filing and amendment of Plaintiffs' initial motion for an award of costs and expenses and thus were not part of the costs and expenses previously awarded by the Court on April 8, 2021. "It is well-established that plaintiffs who are entitled to recover attorneys' fees are also entitled to recover reasonable litigation-related expenses as part of their overall award." *Singleton*, 976 F. Supp. 2d at 689. Such costs may include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988) (internal quotations omitted).

27.     The Court concludes that Class Counsel's request for the reimbursement of $7,688.02 in expenses from the Settlement Fund is reasonable and should be approved.

### *The Requested Service Awards are Reasonable*

28.     Plaintiffs request approval for a $40,000 service award for each of the six Class Representatives: (1) D&M Farms; (2) Mark Hasty; (3) Dustin Land; (4) Rocky Creek Peanut Farms, LLC; (5) Daniel Howell; and (6) Lonnie Gilbert. "At the end of a successful class action, it is common for trial courts to compensate class representatives for the time and effort they invested to benefit the class." *Reynolds v. Fidelity Invs. Institutional Operations Co.*, 1:18-CV-423, 2020 WL 92092, at *4 (M.D.N.C. Jan. 8, 2020). Service awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 578 (E.D. Va. 2016) (quoting *Manuel*, 2016 WL 1070819, at *6). Among the factors to be considered in determining the reasonableness of a service award are "the actions the plaintiff has taken to protect the interests

16

of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Manuel*, 2016 WL 1070819, at *6 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)). Service awards are particularly appropriate where, as here, "there was no preceding governmental action alleging a conspiracy and taking a high-profile role threatened to jeopardize class representatives' relationships with their suppliers." *Linerboard*, 2004 WL 1221350, at *18. Moreover, no Class member objected to the requested service awards.

29.     Notably, it was the Class Representatives, not a government agency, that helped initiate this case, followed by important assistance in the investigation and prosecution of Plaintiffs' claims against Defendants. Put simply, this case would not exist without the Class Representatives. The Class Representatives spent significant time assisting the litigation of this case. They (1) responded to written discovery and collected, reviewed, and produced documents relating to their claims; (2) prepared for and sat for lengthy depositions by defense counsel; (3) reviewed and approved the complaint and other substantive pleadings; and (4) considered and approved the settlements. The Class Representatives pursued the litigation knowing that Defendants might retaliate against them, thus risking their livelihoods. They assumed this risk and responsibility to benefit the entire Class, even though their claims were not among the largest. *See Archbold*, 2015 WL 4276295, at *6 ("Had the Plaintiff not stepped forward to prosecute these claims, the rest of the class would have received nothing."). By stepping forward and diligently performing their duties as Class Representatives, they have performed a valuable public service that will benefit thousands of peanut farmers.

30.     The requested service awards are also in accord with amounts approved in other class action litigations in this Circuit and around the country. *See, e.g., Interior Molded Doors*

*Antitrust Litig.* (court approved $75,000 service awards to each class representative); *Seaman,* 2019 WL 4674758, at *7 (awarding class representative $125,000); *Celebrex,* 2018 WL 2382091, at *5 (three class representatives each awarded $100,000); *Titanium Dioxide,* 2013 WL 6577029, at *1 (one class representative awarded $125,000 and two class representatives awarded $25,000 each); *see also In re High-Tech Emp. Antitrust Litig.,* No. 11-CV-02555509-LHK, 2015 WL 5158730, at *17 (awarding one class representative $140,000 and four class representatives $100,000 each); *Marchbanks Truck Serv. v. Comdata Network, Inc.,* No. 07-1078-JKG, 2014 WL 12738907, at *3-4 (E.D. Pa. July 14, 2014) (awarding $150,000 to one class representative and $75,000 each to two others).

## CONCLUSION

For the reasons stated above, Plaintiffs' Motion for an Award of Attorneys' Fees and Expenses and for Class Representative Service Awards is GRANTED:

(1) Class Counsel are awarded $34,250,000 in attorneys' fees, which is one-third of the $102,750,000 Settlement Fund;

(2) Co-Lead Counsel are authorized to equitably allocate the fee award to Class Counsel in a good-faith manner that reflects Co-Lead Counsel's judgment as to each individual Class Counsel's contribution to the institution, prosecution, and resolution of the litigation.

(3) Class Counsel are awarded $7,688.02 in unreimbursed litigation costs and expenses; and

(4) Each of the Class Representatives listed in Paragraph 28 above shall be awarded a service award in the amount of $40,000.

(5) The Court finding no just reason for delay, this Order shall be entered as of this date pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

Dated: _____, 2021

Honorable Raymond A. Jackson
U.S. District Judge